1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JERRY HUDSON,

              Plaintiff,

    v.

MICHAEL CHERTOFF, *et al.*,

              Defendants.

No. C05-01735RSL

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS AND FOR
SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on defendants' "Motion to Dismiss And/Or for Summary Judgment" (Dkt. #19).  Plaintiff, an African-American, alleges that he was terminated from his position with United States Customs and Border Protection ("CBP") because of his race, his disability, and in retaliation for making complaints about his employer's discriminatory practices and failures to accommodate his disability.  Defendants now move to dismiss plaintiff's claims.  For the reasons discussed below, defendants' motion is granted.

## II. FACTUAL BACKGROUND

Plaintiff was hired as a Customs Inspector with the United States Customs Service[1] on

---

[1] In March 2003, the Customs Service and United States Border Patrol were consolidated into the newly formed United States Customs and Border Protection.  At that time, the position of "Customs Inspector" was reclassified as a "Customs and Border Protection Officer."

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS AND FOR SUMMARY JUDGMENT- 1

December 23, 2002.  Since this was his first position at CBP, plaintiff was appointed as a career conditional employee, which means that he was subject to the completion of a one-year probationary period.  This probationary period "is the final, most significant step, in the hiring process for new employees" and is used "to observe an employee's performance and conduct for the purpose of determining fitness for continued and long-term employment."  Declaration of Marion J. Mittet ("Mittet Decl.") (Dkt. #20), Ex. B.  CBP policy states that "[a]n employee serving a probationary or trial period, who has not achieved competitive status through a prior permanent appointment may be terminated from his/her position with a simple written notice that generally outlines the employee's deficiencies and specifies a termination date."  Id.  The authority to terminate probationary policies "is delegated to the Directors of Field Operations, Special Agents-in-Charge, and Principal Headquarters Officers."  Id.  Plaintiff was terminated pursuant to this policy just five days before the expiration of his probationary period.  In the letter of termination, Director of Field Operations for the Seattle Field Office, Thomas Hardy, stated that the decision to terminate plaintiff was made for three reasons: (1) his failure to report a bribery attempt in a timely fashion; (2) his inability to fully perform his duties due to his medical condition; and (3) his unexcused absence from work.  Mittet Decl., Ex. G.

**A.     The Bribery Attempt**

While on medical leave in August of 2003, plaintiff was approached by an acquaintance and offered a bribe in return for his assistance in moving a large amount of money into Canada from the United States.  According to CBP policy at the time, any information relating to bribery or attempted bribery of a CBP employee was to be "immediately reported by the recipient to the Office of Internal Affairs."  Mittet Decl., Ex. L.  In this instance, plaintiff reported the attempted bribe to his supervisors, Michael Brydie and Kenneth Williams, on September 8, 2003, a week after returning to work from medical leave.  On the same day he relayed information about the bribe attempt to supervisors, plaintiff notified Internal Affairs of the incident.  At some point thereafter, Internal Affairs conducted an investigation of the incident and referred the matter to

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS AND FOR SUMMARY JUDGMENT- 2

1  CBP management for further action.  Thomas Hardy received his copy of the Internal Affairs
2  report on December 12, 2003.

3  **B.   Plaintiff's Knee Injury**

4          Between February and April of 2003 plaintiff injured his knee while attending the
5  Customs Inspector Basic Training Course in Glynco, Georgia.  Though plaintiff was able to
6  complete the course and return to work in Blaine, Washington, he soon re-aggravated his injury
7  by tearing his meniscus while on duty in June of 2003.  Surgery was conducted to repair the tear
8  on August 8, 2003.  Plaintiff was away from work while recovering until September 2, 2003.

9          On August 28, 2003, CBP's Injury Compensation Coordinator sent a letter to Dr. Michael
10  Gannon, plaintiff's surgeon, to determine what work restrictions would apply to plaintiff when
11  he returned to work.  Mittet Decl., Ex. M.  In response to the letter, Dr. Gannon submitted a note
12  indicating that plaintiff could engage in "progressive activity as comfort allows" over the next
13  two months and that plaintiff should be excused from work as needed to attend physical therapy
14  appointments.  Mittet Decl., Ex. N.  Dr. Gannon also submitted a "Duty Status Report"
15  indicating tasks which plaintiff could do "as comfort allows" and other tasks which plaintiff
16  would be able to do in full.  Mittet Decl., Ex. O.  Upon returning to work, plaintiff was to be
17  assigned to light duty pending his full recovery.  Plaintiff contends that he was nevertheless
18  forced into doing work functions beyond light duty despite his doctors orders.

19          On October 8, 2003, plaintiff submitted a new note from Dr. Gannon indicating that his
20  work restrictions should be extended through December 7, 2003 with the "goal of return to full
21  duty at that time."  Mittet Decl., Ex. P.  Dr. Gannon submitted an additional note on December
22  2, 2003, indicating that plaintiff's light duty restrictions should be extended further, and that he
23  would re-evaluate plaintiff's progress in six weeks.  Mittet Decl., Ex. Q.  A week later, plaintiff
24  sought permission to go on paid leave from December 9 through December 24, 2003 to further
25  treat his knee injury.  Mittet Decl., Ex. R.  To support this request, plaintiff submitted a note
26  from his primary care physician, Dr. Gidon Fame, which stated that plaintiff required the time

27
28  ORDER GRANTING DEFENDANTS' MOTION
    TO DISMISS AND FOR SUMMARY JUDGMENT- 3

off to "attend phsyiotherapy."  Mittet Decl., Ex. S.  Plaintiff was then asked to provide a note from Dr. Gannon confirming his leave request, which he subsequently provided to CBP on December 11, 2003.  Mittet Decl., Exs. T, U (Dr. Gannon's note simply stated "off work 12/9/03 – 12/24/03 following surgery.").

On December 16, 2003, Area Port Director Margaret Fearon issued a letter to plaintiff indicating that his leave requests had "become confusing" and that the documentation he had provided to support those requests was "contradictory."  Mittet Decl., Ex. V.  As a result, she denied his leave request, but indicated that he would be assigned to work a later shift doing strictly administrative duties in order to accommodate his need to attend physiotherapy during normal working hours.  Id.  The letter stated that the temporary assignment would begin on December 17, 2003 and continue for six weeks until January 28, 2004 when it was expected that plaintiff would provide CBP with a prognosis from his physician indicating his expected date of return to full-time status.  Id.

On December 17, 2003, the day plaintiff's new assignment was to begin, he failed to arrive at work as scheduled.  That same day he called supervisor Kenneth Williams to report that he had been involved in a motor vehicle accident the day prior and attached a note from a physician confirming that he had injured his lower back and his previously injured knee and that he had been advised to rest and attend physiotherapy for two weeks.  Mittet Decl., Ex. W.  It was the following day, December 18, 2003, that plaintiff was terminated.

**C.   The Complaint**

Five days after his termination, on December 23, 2003, plaintiff sent an e-mail to the EEO office in Seattle, Washington and indicated that he believed that he was improperly terminated due to his race and his disability.  Declaration of Hector Steele Rojas ("Rojas Decl.") (Dkt. #23), Ex. T.  EEO Intake Officer Linda Barnett followed up on plaintiff's complaint and contacted plaintiff for an interview on December 29, 2003.  Mittet Decl., Ex. H.  Plaintiff filed a formal complaint on February 26, 2004.  Mittet Decl, Ex. I.

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS AND FOR SUMMARY JUDGMENT- 4

1   On June 23, 2005, EEOC Administrative Judge Zulema Hinojos-Fall issued an order

2   finding that plaintiff had not established a *prima facie* case of race discrimination, because he

3   failed to show that he was treated differently than similarly situated employees outside his

4   protected class.  Mittet Decl., Ex. J.   Judge Hinojos-Fall also rejected plaintiff's disability

5   discrimination claim after concluding that plaintiff had failed to establish that he was "disabled"

6   under the Rehabilitation Act.  Id.  Judge Hinojos-Fall did not address plaintiff's retaliation

7   claims.

**III.  DISCUSSION**

8

9   **A.   Summary Judgment Standard**

10          Summary judgment is appropriate "if the pleadings, depositions, answers to

11  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

12  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

13  matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if "a reasonable jury could return a

14  verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit

15  under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The

16  evidence is viewed in the light most favorable to the non-moving party.  Id.  "[S]ummary

17  judgment should be granted where the nonmoving party fails to offer evidence from which a

18  reasonable jury could return a verdict in its favor," Triton Energy Corp. v. Square D Co., 68

19  F.3d 1216, 1221 (9th Cir. 1995), or where there is a "complete failure of proof concerning an

20  essential element of the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 323

21  (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's

22  position is not sufficient."  Trinton Energy Corp., 68 F.3d at 1221.

23  **B.   Racial Discrimination**

24          Under Title VII, disparate treatment of employees based on race is a violation of federal

25  law.  Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 658 (9th Cir. 2002).  In

26  determining whether plaintiff's Title VII claim can survive summary judgement, the Court

27

28  ORDER GRANTING DEFENDANTS' MOTION
    TO DISMISS AND FOR SUMMARY JUDGMENT- 5

utilizes the burden-shifting framework established by the Supreme Court in McDonnell Douglas
Corp. v. Green, 411 U.S. 792, 802 (1973).  See Aragon, 292 F.3d at 658-59.  Under that
framework, plaintiff must first make out a *prima facie* case of unlawful employment
discrimination by demonstrating that: (1) he belonged to a protected class; (2) he was qualified
for his position; (3) he was subjected to an adverse employment action; and that (4) similarly
situated employees not in his protected class received more favorable treatment.  Moran v. Selig,
447 F.3d 748, 753 (9th Cir. 2006).

If plaintiff is successful in establishing a *prima facie* case, the burden shifts to defendants
"to articulate a legitimate nondiscriminatory reason for [their] employment decision."  Wallis v.
J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) (quoting Lowe v. City of Monrovia, 775 F.2d
998, 1005 (9th Cir. 1985), as amended, 784 F.2d 1407 (9th Cir. 1986)).  If defendants are able to
rebut the presumption of discrimination raised by the *prima facie* showing, plaintiff must then
demonstrate that defendants' articulated reason is a pretext for unlawful discrimination.  Aragon,
292 F.3d at 658.

"The requisite degree of proof necessary to establish a *prima facie* case for Title VII . . .
on summary judgment is minimal and does not even need to rise to the level of a preponderance
of a doubt."  Wallis, 26 F.3d at 889.  Defendants do not challenge plaintiff's showing of the first
three elements, but instead argue that plaintiff's Title VII claim must fail because he has failed
to put forward evidence indicating that similarly situated individuals outside of his protected
class were treated more favorably than himself.   To establish this fourth necessary element, a
plaintiff seeking relief "must demonstrate, at the least, that they are similarly situated to those
employees in all material respects."  Moran, 447 F.3d at 755.  In disciplinary cases, where a
plaintiff claims that he was punished more harshly than a similarly situated employee based on a
prohibited reason, "a plaintiff must show that he is similarly situated with respect to
performance, qualifications, and conduct."  Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618
(7th Cir. 2000).  "This normally entails a showing that the two employees dealt with the same

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS AND FOR SUMMARY JUDGMENT- 6

1   supervisor, were subject to the same standards, and had engaged in similar conduct without such

2   differentiating or mitigating circumstances as would distinguish their conduct or the employer's

3   treatment of them." Id. at 617-18.

4       Plaintiff has failed to make such a showing.  He attempts to meet his burden by

5   identifying two Caucasian probationary employees who he contends are similarly situated, yet

6   treated more favorably.  Plaintiff provides little information about these individuals aside from

7   the fact that they were probationary employees who were not terminated despite being

8   disciplined for "DUI offenses."  Without additional information about these individuals, it is

9   impossible to determine if they were similarly situated to plaintiff with regard to qualifications

10   and performance or if they shared the same ultimate supervisor.  The absence of this

11   information, on its own, is fatal to plaintiff's race discrimination claim.  See Grosz v. The

12   Boeing Co., 455 F. Supp.2d 1033, 1040-41 (C.D. Cal. 2006) (plaintiff's failure to provide

13   "evidence of the job duties, responsibilities, or the type of . . . work being done" by allegedly

14   similarly situated employees entitles defendant to summary judgment on race discrimination

15   claim).   Regardless, even if plaintiff had established that these employees were similarly

16   situated with regard to qualifications, performance and supervision, he would have still failed to

17   make a *prima facie* case of race discrimination because he has not established that these

18   allegedly similarly situated employees engaged in similar conduct.  Defendants maintain that

19   plaintiff was terminated for his failure to report an attempted bribe in a timely fashion, his

20   inability to perform his job in an adequate fashion due to his knee injury, and his unexcused

21   absence from work on December 17, 2003.  These offenses, especially when combined together,

22   are more serious and materially different than a DUI offense.  At a basic level, an unreported

23   bribery attempt has the potential to directly implicate the security of the border and the integrity

24   of the CBP.  A DUI offense, while serious, does not have similarly far reaching potential

25   consequences.  Because plaintiff has failed to identify a truly "similarly situated" CBP employee

26   outside of his protected class who was treated more favorably than himself, the Court "need not

27

28   ORDER GRANTING DEFENDANTS' MOTION
     TO DISMISS AND FOR SUMMARY JUDGMENT- 7

1  address any of the underlying allegations of disparate treatment" or his pretext argument.  Peele

2  v. Country Mutual Ins. Co., 288 F.3d 319, 331-32 (7th Cir. 2002).  Defendants' motion for

3  summary judgment on plaintiff's race discrimination claim under Title VII is granted.

4  **C.     Rehabilitation Act Claim**

5         Plaintiff also alleges that he was both terminated in violation of the Rehabilitation Act

6  and that defendants failed to make reasonable accommodations as required under the

7  Rehabilitation Act.  To make a *prima facie* case under the Rehabilitation Act, a plaintiff must

8  demonstrate that (1) he is a person with a disability, (2) who is otherwise qualified for

9  employment, and (3) that he suffered discrimination because of his disability.  Walton v. United

10  States Marshals Serv., No. 05-17308, 2007 WL 1815504, at *4 (9th Cir. June 26, 2007).  As a

11  threshold question, the Court must first determine whether plaintiff's knee injury qualifies as a

12  "disability" under the Rehabilitation Act.  See Sanders v. Arneson Prods., Inc., 91 F.3d 1351,

13  1353-54 (9th Cir. 1996).  "The Americans with Disabilities Act, whose standards of substantive

14  liability are incorporated in the Rehabilitation Act, defines 'disability' as: (A) a physical or

15  mental impairment that substantially limits one or more of the major life activities of such

16  individual, (B) a record of such an impairment, or (C) being regarded as having such an

17  impairment."  Walton, 2007 WL 1815504, at *4.  For the reasons described below, the Court

18  concludes that plaintiff has failed to put forward any evidence indicating that his knee injury

19  constitutes a "disability" under the Rehabilitation Act or that his employer regarded the injury as

20  a disability.  As such, defendants' motion for summary judgment on plaintiff's Rehabilitation

21  Act claims is granted.

22         For good reason, plaintiff makes little effort to argue that his knee injury actually

23  constituted a "disability" under the Rehabilitation Act.  It is generally the case that "a temporary

24  injury with minimal residual effects cannot be the basis for a sustainable claim under the ADA."

25  Sanders, 91 F.3d at 1354; see also Johnson v. City and County of San Francisco, Nos. C 99-43-

26  4375, 2001 WL 263298, *4 (N.D. Cal. Mar. 8, 2001) (hernia is not a "disability" under the ADA

27

28  ORDER GRANTING DEFENDANTS' MOTION
    TO DISMISS AND FOR SUMMARY JUDGMENT- 8

1   because it is a temporary condition that can be corrected with surgery); 29 C.F.R. § 1630, App.,

2   § 1630.2(j) ("temporary, non-chronic impairments of short duration, with little or no long term

3   or permanent impact, are usually not disabilities.  Such impairments may include, but are not

4   limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza").  Plaintiff

5   has offered no evidence that would indicate his knee injury was anything more than a temporary

6   condition that would cease to hinder his ability to perform the functions of his job once his

7   treatment was complete.  In fact, plaintiff's physician indicated in October of 2003 that he

8   believed that plaintiff would be able to return to work full time in December of 2003.  Mittet

9   Decl., Ex.  P.  Though he appears to have re-injured the knee in the December 2003 automobile

10  accident, his physician's note indicates that his new injuries could be treated with anti-

11  inflammatory drugs and approximately two weeks of physiotherapy.  Mittet Decl., Ex. W.  In

12  short, plaintiff has put forward no evidence indicating that his knee injury was anything more

13  than a temporary injury of approximately six months duration.  As such, he has failed to

14  establish that his injury fell within the Rehabilitation Act's definition of "disability."  See

15  Sanders, 91 F.3d at 1354.

16      Even if plaintiff's injury was not temporary, plaintiff's claim would nevertheless fail

17  because he has made no effort to establish that his knee injury substantially limited his ability to

18  engage in any major life activity.  See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S.

19  184, 195 (2002) ("Merely having an impairment does not make one disabled for purposes of the

20  ADA. Claimants also need to demonstrate that the impairment limits a major life activity" in a

21  "substantial" way).  Major life activities include "caring for oneself, performing manual tasks,

22  walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).

23  Though plaintiff has not specifically identified any of these major life activities as being

24  substantially limited, the Court will infer from the record that he is attempting to argue that his

25  knee injury substantially limited his major life activity of working.  But to establish such a

26  limitation, plaintiff must demonstrate that he is "significantly restricted in the ability to perform

27

28  ORDER GRANTING DEFENDANTS' MOTION
    TO DISMISS AND FOR SUMMARY JUDGMENT- 9

either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Further, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Id. In the context of law enforcement, the relevant inquiry is whether plaintiff is "unable to work in the field of law enforcement generally." Papadopoulos v. Modesto Police Dep't., 31 F. Supp.2d 1209, 1220 (E.D. Cal. 1998). Plaintiff has not alleged that he is unable to work in law enforcement generally, nor is there evidence to believe that would be the case. Plaintiff has therefore failed to support any allegation that he is substantially limited in his ability to engage in any major life activity.

Having failed to establish that he was in fact disabled, plaintiff devotes the majority of his argument to the proposition that his employers at CBP regarded him as disabled. "A person is regarded as being disabled if '(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.'" Coons v. Sec'y of the United States Dep't of the Treasury, 383 F.3d 879, 886 (9th Cir. 2004). By adding the "regarded as" definition of disability, Congress sought to "protect people from discriminatory actions, based on employer's myths, fears and stereotypes about disability, which may occur even where a person does not actually have an actual disability." Papadopoulos, 31 F. Supp.2d at 1218. In support of this argument plaintiff can only point to the fact that his supervisors were aware that he needed rehabilitation to treat his injury.[2] This, however, is not sufficient to survive summary judgment. Instead, plaintiff must advance evidence indicating that his supervisors believed that he had a "physical impairment that substantially limits one or more major life activities." Plaintiff, however, has

---

[2] Plaintiff appears to believe that his supervisors' awareness of his knee injury constitutes evidence that they believed he was disabled. In doing so, plaintiff confuses the ordinary meaning of the word "disabled" with the term of art contained in the Rehabilitation Act. See Sanders, 91 F.3d at 1354 n.2 ("a person may be 'disabled' in the ordinary usage sense, or even for the purposes of receiving disability benefits from the government, yet still not be 'disabled' under the ADA.").

1    put forward no evidence indicating that anyone at CBP believed his injury to be anything other

2    than temporary.  Without such evidence, his "regarded as disabled" theory of liability under the

3    Rehabilitation Act cannot survive summary judgment.[3]  Thompson v. Holy Family Hospital, 121

4    F.3d 537, 541 (9th Cir. 1997).

5    **D.    Retaliation Claim**

6          **1.    Exhaustion of Administrative Remedies**

7          Plaintiff also alleges that his employment was improperly "terminated because of his

8    complaints to his supervisors about racially discriminatory practices and tensions at the Blaine

9    post and also about violations of the Rehabilitation Act by management in violation of Title

10   VII."  Complaint at 8-9.  Defendants argue that this Court lacks subject matter jurisdiction over

11   such a claim because plaintiff failed to exhaust his administrative remedies by not alleging

12   retaliation during EEO counseling process.  See Lyons v. England, 307 F.3d 1092, 1103 (9th

13   Cir. 2002).  "The administrative charge requirement serves the important purposes of giving the

14   charged party notice of the claim and 'narrow[ing] the issues for prompt adjudication and

15   decision.'"  Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting Laffey v.

16   Northwest Airlines, Inc., 567 F.2d 429, 472 n. 325 (D.C. Cir. 1976)).  As such, "[i]ncidents of

17   discrimination not included in an EEOC charge may not be considered by a federal court unless

18   the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'"

19   Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1475-76 (quoting

20   Brown v. Puget Sound Elec. Apprenticeship & Training Trust, 732 F.2d 726, 729 (9th Cir.

21   1984).  In evaluating whether claims not included are sufficiently related to those made in the

22   EEO charge, "it is appropriate to consider such factors as the alleged basis of the discrimination,

23   dates of discriminatory acts specified within the charge, perpetrators of discrimination named in

24   the charge, and any locations at which discrimination is alleged to have occurred."  B.K.B. v.

25

26         [3] Because plaintiff has not advanced evidence to support his claim that he was "disabled" under
     the Rehabilitation Act, it is unnecessary to reach the issue of whether he was provided with "reasonable
27   accommodation."  Sanders, 91 F.3d at 1353; see also Coons, 383 F.3d at 886 n.3.

     ORDER GRANTING DEFENDANTS' MOTION
28   TO DISMISS AND FOR SUMMARY JUDGMENT- 11

1   Maui Police Dep't., 276 F.3d 1091, 1100 (9th Cir. 2002).

2       The Court's exhaustion analysis thus requires that two questions be answered.  First,

3   were plaintiff's retaliation claims contained in his initial EEO complaint?  Second, if they were

4   not, are his retaliation claims "like or reasonably related to the allegations contained in the

5   EEOC charge[?]"  Green, 883 F.2d at 1475-76.  The Court analyzes each retaliation claim in

6   turn.

7       With regard to plaintiff's allegations that he was fired in retaliation for his complaints to

8   supervisors regarding violations of the Rehabilitation Act, it is apparent that such allegations

9   were either raised by plaintiff in the EEO process or, at the very least, reasonably related to his

10  allegations that he was terminated due to his disability.  Plaintiff's unsworn declaration and

11  formal complaint contain a multitude of references to concerns that he was terminated in

12  response to his efforts to obtain accommodations for his disability.  For instance, in his unsworn

13  declaration, plaintiff stated that he made the decision to have a union representative accompany

14  him to meetings with Branch Chief Phillip Stanford in December 2003 because plaintiff believed

15  that management had begun to regard him as a "problem employee" that they "wished to get rid

16  of" due to his complaints regarding management's treatment of his disability.  Rojas Decl., Ex.

17  K at p. 6.   In his formal complaint, plaintiff made additional references to Stanford's adverse

18  reaction to his accommodation requests and alleged that he was fired in part out of Stanford's

19  desire to "cover for" CBP's "mishandling" of his "injury issues."  Rojas Decl., Ex. E-1 at p. 8.

20  He went on to allege that Stanford "purposely singled [plaintiff] out, retaliated, harassed and

21  went out of his way to fire" plaintiff both because of his racist attitudes toward African-

22  Americans, but also because of his "mishandling of my disability issues."  Id. at 9.  Though a

23  retaliation claim may not have been stated with the clarity that one would expect from a lawyer,

24  plaintiff is not a lawyer, and the language used by in his EEO charge is to be construed liberally

25  and "should not be held to the higher standard of legal pleading by which we would review a

26  civil complaint."  B.K.B. v. Maui Police Dep't., 276 F.3d 1091, 1103 (9th Cir. 2002).  The

27  Court therefore concludes that it has subject matter jurisdiction over plaintiff's retaliation claim

28  ORDER GRANTING DEFENDANTS' MOTION
    TO DISMISS AND FOR SUMMARY JUDGMENT- 12

1   related to his efforts to obtain accommodations for his disability because such a claim is

2   contained in his initial complaint and is "reasonably related to [his] original theory of the case"

3   as laid out in the factual allegations of his charge.  Id. at 1102.

4          Plaintiff's retaliation claim involving his complaints to management about racially

5   discriminatory practices is a closer issue.  In his response to defendants' motion, plaintiff fails to

6   identify any statement in the EEO investigation record that would indicate that he had alleged

7   that he had been fired in retaliation for making complaints to his supervisors about racial

8   discrimination.  Nor does he articulate any reason why such an EEO investigation of such

9   retaliation could "reasonably be expected to grow out of" his articulated claim of racial

10  discrimination.  Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990) (quoting Green, 883 F.2d

11  at 1476).  Though both his retaliation claim and his race discrimination claim relate to the racial

12  climate at Blaine, both claims are distinct and involve separate factual inquiries.  Unlike

13  plaintiff's retaliation claim relating to his requests for accommodation, the alleged "protected

14  activity" relevant to this claim does not involve facts that would necessarily be part of the EEO's

15  underlying discrimination investigation.  Because plaintiff has failed to identify any evidence in

16  the underlying EEO record that would indicate that he notified investigators that he had made

17  earlier complaints to supervisors relating to his concerns of racial discrimination, there is no

18  reason to believe that retaliation claims would be uncovered by the general investigation of

19  plaintiff's race discrimination claim.  The Court, therefore, concludes that plaintiff failed to

20  properly exhaust his administrative remedies with regard to this retaliation claim.  See

21  McKenzie v. Illinois Dep't of Trans., 92 F.3d 473, 482-83 (7th Cir. 1996) (dismissing retaliation

22  claim on similar grounds where retaliation claim could have been alleged in the EEOC charge,

23  but was not).  Defendants' motion to dismiss this claim is granted.

24          **2.     Rehabilitation Act Retaliation Claim**

25          Having determined that the Court has subject matter jurisdiction over plaintiff's

26  retaliation claim under the Rehabilitation Act, the next question is whether plaintiff's claim can

27  survive summary judgment.  See Coons, 383 F.3d at 887 (even when a plaintiff is deemed to not

28  ORDER GRANTING DEFENDANTS' MOTION
    TO DISMISS AND FOR SUMMARY JUDGMENT- 13

1   be a "qualified individual with a disability," they may still pursue a retaliation claim under the

2   Rehabilitation Act provided that the employee sought accommodation in good faith); see also

3   Heisler v. Metro. Council, 339 F.3d 622, 630-32 (8th Cir. 2003).  To make a *prima facie*

4   showing of retaliation, a plaintiff must show: "(1) involvement in a protected activity, (2) an

5   adverse employment action and (3) a causal link between the two."  Brown v. City of Tucson,

6   336 F.3d 1181, 1187 (9th Cir. 2003).  To establish a causal link, "[t]he plaintiff must present

7   'evidence adequate to create an inference that an employment decision was *based on* an illegal

8   discriminatory criterion."  Coons, 383 F.3d at 887 (quoting O'Connor v. Consol. Coin Caterers

9   Corp., 517 U.S. 308, 312 (1996)) (emphasis in original).  Put differently, to establish causation,

10  plaintiff must show "by a preponderance of the evidence that engaging in the protected activity

11  was one of the reasons for [his] firing and that but for such activity [he] would not have been

12  fired."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064 -1065 (9th Cir. 2002) (quoting

13  Ruggles v. California Polytechnic State Univ., 797 F.2d 782, 785 (9th Cir.1986)).

14      If plaintiff can establish a *prima facie* case, the burden shifts to defendants to present

15  legitimate reasons for plaintiff's termination.  Id.  If defendant presents legitimate reasons for

16  plaintiff's termination, plaintiff then must demonstrate genuine issues of material fact as to

17  whether defendants' explanation was a pretext for a retaliatory purpose.  Id.

18      The Court concludes that plaintiff has failed to establish a *prima facie* case of retaliation.

19  While the Court agrees that requesting an accommodation under the Rehabilitation Act is a

20  protected activity, McAlindin v. County of San Diego, 192 F.3d 1226, 1238 (9th Cir. 1999), and

21  that plaintiff suffered an adverse employment action when he was terminated, plaintiff has failed

22  to establish a causal link between his protected activity and his termination.  In support of his

23  contention that such a causal link exists, plaintiff relies solely on the temporal proximity

24  between his termination and his complaints.  Response at p. 24.  Though plaintiff is indeed

25  correct that causation "may be inferred from circumstantial evidence, such as the employer's

26  knowledge that the plaintiff engaged in protected activities and the proximity in time between

27  the protected action and the allegedly retaliatory employment decision," Yartzoff v. Thomas,

28  ORDER GRANTING DEFENDANTS' MOTION
    TO DISMISS AND FOR SUMMARY JUDGMENT- 14

809 F.2d 1371, 1376 (9th Cir. 1987), such proximity does not necessarily lead to the conclusion that there is a causal connection between events in all circumstances.  See Villiarimo, 281 F.3d at 1065 ("timing alone will not show causation in all cases").  While it is true that plaintiff made requests for accommodation in the weeks prior to his termination in December 2003, he first began making requests for accommodation in early August of 2003, more than four months prior to his termination.  Gaps of four months time between the initiation of the protected activity and the adverse employment action has been held by other courts to be too distant to establish a *prima facie* case without other evidence.  See Filipovic v. K & R Express Sys., Inc., 176 F.3d 390, 399 (7th Cir. 1999); Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997) (four month time gap not enough without additional evidence to create inference of causation).

The Court believes the distance in time between plaintiff's initial requests for accommodation and his eventual termination is too great to create a causal link on its own.  If anything, the evidence demonstrates that plaintiff's requests for accommodations, with some exceptions, were met with efforts to accommodate plaintiff's physical restrictions.  Indeed, as late as December 16, 2003, plaintiff was assigned to administrative duties in response to his need to attend physiotherapy.  It was only after plaintiff reached the end of his probationary period and Thomas Hardy received the report from Internal Affairs on December 12, 2003, detailing plaintiff's failure to report the bribery attempt and his refusal to participate in the investigation that plaintiff was terminated.  If causation is to be inferred from timing, the natural conclusion would be to correlate plaintiff's termination to these events.

Further, plaintiff has failed to put forward any evidence that would indicate that Thomas Hardy, the CBP official ultimately responsible for his termination, was even aware of plaintiff's dissatisfaction with CBP over his perceived lack of accommodation.  Without such evidence, causation cannot be established.  See Cohen v. Fred Meyer, Inc., 686 F.2d 793, (9th Cir. 1982) (failure to establish relevant supervisor's knowledge of protected activity is fatal to establishment of a *prima facie* case).  Though temporal proximity may in some instances be

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS AND FOR SUMMARY JUDGMENT- 15

sufficient to establish a causal connection between a protected activity and an adverse
employment decision, the Court concludes that such proximity is not sufficient, on its own, to
create such a connection in this case.

Even if the temporal proximity between plaintiff's request for accommodation and his
termination was sufficient, on its own, to create a *prima facie* case for retaliation,[4] defendants'
motion for summary judgement would still be granted because plaintiff has failed to demonstrate
pretext "'either directly by persuading the court that a discriminatory reason more likely
motivated the employer or indirectly by showing that the employer's proffered explanation is
unworthy of credence.'"  Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1124 (9th Cir. 2000)
(quoting Tex. Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).  When a plaintiff
attempts to prove pretext with circumstantial evidence, as is the case here, he must do so with
"specific" and "substantial" evidence "that tends to show that the employer's proffered motives
were not the actual motives because they are inconsistent or otherwise not believable." Godwin
v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998).  Plaintiff has made no effort to make
such a showing and instead relies solely on the temporal proximity between his termination and
his complaints.  This does not constitute "specific" or "substantial" evidence that would lead a
rational trier of fact to conclude that CBP's concerns about plaintiff's response to the bribery
attempt, his failure to cooperate with a further investigation of the bribery attempt, and his
numerous absences were simply a "pretext" for CBP's desire to retaliate against plaintiff for his
complaints regarding his perceived lack of accommodations.  In the absence of such evidence,
defendants' motion for summary judgment must be granted.

---

[4] As discussed earlier in the order, defendants have satisfied their burden in presenting legitimate
reasons for plaintiff's termination.  These reasons include plaintiff's failure to timely report a bribe, his
inability to perform his position due to his medical condition and his unexcused absence.

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS AND FOR SUMMARY JUDGMENT- 16

1

## IV.  CONCLUSION

2      For all the foregoing reasons, defendants' motion to dismiss and for summary judgment

3  (Dkt. #19) is GRANTED.

4

5      DATED this 3rd day of August, 2007.

6

7

8                                                Robert S. Lasnik
                                                 United States District Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  ORDER GRANTING DEFENDANTS' MOTION
    TO DISMISS AND FOR SUMMARY JUDGMENT- 17